UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   9/25/2025
```

GUSTAVE LIPMAN, *as Executor for the Estate of Ira Lipman*,

                              Plaintiff,

              -against-

ARTHUR J. GALLAGHER RISK
MANAGEMENT SERVICES, LLC,

                              Defendant.

24-cv-8656 (MKV)

OPINION AND ORDER
DENYING IN PART
AND
GRANTING IN PART
MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Gustave Lipman as Executor of the Estate of Ira Lipman (the "Estate") brings this action against its longtime insurance broker Arthur J. Gallagher Risk Management Services, LLC ("Gallagher"), asserting multiple claims arising out of Gallagher's alleged failure to secure an extension of insurance coverage requested by the Estate [ECF No. 14 ("AC")]. Gallagher moves to dismiss all of the Estate's claims [ECF No. 15]. For the reasons set forth below, the motion to dismiss is DENIED in part and GRANTED in part.

# I.    BACKGROUND[1]

## A.  Facts

Plaintiff Gustave Lipman as Executor of the Estate of Ira Lipman (the "Estate") "owns a set of interconnected apartments on the 17th Floor of [t]he Sherry-Netherland building in New York City" (the "17th Floor" or the "Lipman Apartments"). AC ¶ 2; *see id.* ¶ 17. "On March 15, 2023, the 18th floor of the Sherry-Netherland exploded into flames." AC ¶ 5. "The resulting fire

---

[1] The facts are taken from the Amended Complaint [ECF No. 14 ("AC")]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true.").

and the attempts to contain it led to the collapse of the 17th floor ceiling, which meant that a flood of water, ash, and smoke flowed into the Lipman [Apartments], leading to significant damage." AC ¶ 6. According to the Estate, there was no "active insurance on the Lipman Apartments" at the time because Defendant Arthur J. Gallagher Risk Management Services, LLC ("Gallagher") had "failed to arrange for [a] coverage extension" after the Estate had expressly instructed Gallagher to arrange for such coverage extension. AC ¶¶ 3, 4, 6.

### 1. The Parties' Relationship

As alleged in the Amended Complaint, prior to 2013, Ira Lipman, the Lipman family, and "affiliated entities" had "relied for many years on Andrew Marks of Bollinger Inc. for insurance brokerage services." AC ¶ 20. In 2013, Gallagher acquired Bollinger Inc. and "absorbed [its] clients, including the Lipman family." AC ¶ 20. "After this acquisition, Mr. Marks became the contact person at Gallagher," Plaintiff's "only" insurance broker. AC ¶¶ 19, 20.

The Amended Complaint alleges that, "for more than a decade" since the acquisition, both before and after Ira Lipman's death, "Gallagher has routinely acted on Plaintiff's behalf to provide its professional services in securing (and/or renewing) many kinds of insurance policies." AC ¶ 21 & n.1. The Amended Complaint further alleges that "Gallagher's services" have "included not just rote execution of a request for a specific policy, but also the provision of advice and guidance . . . as to what insurance policies were available, what policies would best suit the Lipman family's (sometimes novel) circumstances, and how to best protect the Lipman family (and Plaintiff) with the available/possible insurance policies." AC ¶ 22. The Amended Complaint specifically alleges, for example, that "Plaintiff has sought out Gallagher's expertise to help find and acquire tens of millions of dollars in homeowners' liability coverage for millions of dollars in high-end real estate

in New York (including the Lipman Apartments), insurance coverage for a rare art collection," and insurance in connection with "the Lipman family's businesses." AC ¶ 21.

The Estate alleges that a "professional services agreement between the parties . . . formed at the start of [the] relationship" between Ira Lipman and Gallagher and has "renewed with every successive invoice sent by Gallagher and paid by the Estate." AC ¶ 23. The Estate alleges that, pursuant to this alleged agreement, "once Plaintiff indicated to Gallagher what insurance needs it had, Gallagher would act on Plaintiff's behalf as an insurance broker, assess [Plaintiff's] needs for insurance (including through direct instructions from Plaintiff)," and "work diligently to acquire the necessary and appropriate insurance coverage." AC ¶ 23. The Estate further alleges that, pursuant to the parties' alleged agreement, Gallagher would "earn a professional services fee (a broker's fee) for [such] work." AC ¶ 23. Indeed, the Estate expressly alleges that it "[t]ypically pays Gallagher "invoice payment[s]" for "both the price of the desired insurance and Gallagher's professional services/broker fee." AC ¶ 24.

### 2. Prior Coverage for the Lipman Apartments

As alleged in the Amended Complaint, "Plaintiff began seeking Gallagher's help in acquiring and maintaining appropriate insurance coverage" for the Lipman Apartments "starting around 2016." AC ¶ 26. The Estate alleges that "[f]rom that point forward, Gallagher worked on Plaintiff's behalf to maintain a set of annual insurance policies for the Lipman Apartments, with the goal of ensuring that coverage did not lapse." AC ¶ 26. According to the Amend Complaint, every year from 2018 through 2022, "Gallagher extended coverage of the Lipman Apartments on behalf of the Estate" for one year and "sent the Estate four invoices" over the course of that year.

AC ¶ 27.  All such invoices "were paid in full."  AC ¶ 27.

### 3.  Gallagher's Alleged Failure To Obtain Requested Coverage

As alleged in the Amended Complaint, "insurance policies that Gallagher [previously had] procured for the Lipman Apartments with AIG were set to expire on February 28, 2023."  AC ¶ 30.  Further, according to the Amended Complaint, "[a]cting on Plaintiff's behalf, Gallagher was able to negotiate and secure a full one-year policy extension from AIG to begin on March 28, 2023."  AC ¶ 30.  As such, the Estate alleges, it "realized that it needed to seek interim coverage for the one-month period between the expiration of the old AIG policy, and the beginning of the new AIG policy."  AC ¶ 31.

According to the Amended Complaint, Gallagher "suggested—and began work to secure— a 30-day extension of the existing AIG policy" to "cover the time frame of February 28, 2023, until March 28, 2023," (a "Desk Binder").  AC ¶ 32.  The Estate alleges that "Gallagher negotiated the term" of the Desk Binder "directly with the insurer on Plaintiff's behalf."  AC ¶ 32.  The Estate further alleges that it "did not speak directly with AIG and instead relied entirely on Gallagher's abilities and professional expertise."  AC ¶ 32.

As alleged in the Amended Complaint, "[o]n February 24, 2023, Mellecia McDonald (Area Vice President, Client Service Manager, Private Client Services for Gallagher) sent an email to" an agent of the Estate.  AC ¶ 33.  McDonald's email is attached to the Amended Complaint [ECF No. 14-1 at 2–3 ("McDonald Email").  It states, in pertinent part:

> Here is your desk binder approval outlined as follows—this is a weekly desk binder and we can go up to 30 days on this but let me know if extensions are needed . . . . If this is acceptable to you and the client please indicate your acceptance of these terms by return email.

McDonald Email; AC ¶ 34.  The McDonald Email "set out the specific coverage terms."  AC ¶ 35.

It noted that "[t]here is no charge for this binder."  McDonald Email.

The same day, February 24, 2023, the Estate responded via email: "This is acceptable so please proceed with extension of coverage for 30 days."  AC ¶ 36.  That email from the Estate is also attached to the Amended Complaint [ECF No. 14-1 at 2 ("Estate Email")].

According to the Amended Complaint, the Estate "never heard back from Gallagher" in response to the Estate Email directing Gallagher to "proceed with extension of coverage for 30 days."  AC ¶¶ 36, 37.  The Estate alleges that it had "assumed" Gallagher had "taken care of" the extension, since the Estate had "used and trusted" Gallagher "for years."  AC ¶ 37.

However, as the Estate alleges in the Amended Complaint, "Gallager failed to secure the desk binder," and "the extension therefore never occurred."  AC ¶ 37.

### 4.  The Damage to the Lipman Apartments

As alleged in the Amended Complaint, on March 15, 2023, "a fire started" on the 18th floor of the Sherry Netherland "directly above the Lipman Apartments."  AC ¶¶ 39, 40.  The Amended Complaint alleges that, during the time it took to contain the fire, the apartment on the 18th floor filled with water, which caused the ceiling of the Lipman Apartments to collapse.  AC ¶ 41.  The Amended Complaint further alleges that, as a result, "water, ash, and debris . . . flowed into the Lipman Apartments, damaging and staining the walls and floors, ruining fixtures and furniture, and permeating the various fabrics and soft surfaces of the Lipman Apartments with the acrid stench of smoke."  AC ¶ 41.

According to the Amended Complaint, the Estate has "expend[ed] more than $800,000 of its own money" remediating damage to the Lipman Apartments.  AC ¶ 56; *see id.* ¶¶ 42, 43.

### 5.  Communications Between the Parties Since the Fire

The Estate alleges that, "[o]n the day of the fire," it "emailed Ms. McDonald" to explain

"the developing situation" and ask "if [the Estate] would be covered if there is water damage that results from a fire event." AC ¶ 46. "Later that day," the Estate alleges, it "asked Ms. McDonald to 'please start the claim process with AIG.'" AC ¶ 46. As alleged in the Amended Complaint, McDonald responded the next day that a claim had been filed. AC ¶ 47.

Thereafter, the Amended Complaint alleges, Gallagher assured the Estate: "[AIG] will pay for the repairs and they will be monitoring the repairs," even after "the policy renews in 2024." AC ¶ 48. The Amended Complaint further alleges that, "[a]n AIG insurance adjuster subsequently visited the [Lipman] Apartment[s] . . . and directed Plaintiff to immediately begin efforts to mitigate the damage, which Plaintiff did." AC ¶ 49. However, the Estate alleges, "[e]ventually Plaintiff learned that the coverage extension had not been in place at the time of the fire, because AIG began refusing coverage" on the ground that "damage [had] occurred during the 30-day window in which coverage had lapsed." AC ¶ 51.

The Estate alleges that, since that time, the Estate has "sent a multitude of communications to Gallagher attempting to resolve this matter." AC ¶ 52. The Estate further alleges that Gallagher has "slow-walked any attempts at negotiation and has steadfastly refused to provide coverage or reimbursement." AC ¶ 52. "In particular," the Estate alleges, "Gallagher has shunted Plaintiff from one team of lawyers to the next—three in all—with each team seemingly oblivious to what the prior teams have discussed," which has required the Estate "to educate Gallagher's lawyers three different times about the same information." AC ¶ 53.

The Estate further alleges that "Gallagher has acknowledged responsibility" yet still refuses to "resolve this matter." AC ¶ 54. The Estate alleges that its counsel sent Gallagher "a copy of an estimated budget for repairing the damage" to the Lipman Apartments, but "it took *four months* (and an explicit threat of litigation) for Gallagher's attorneys to respond." AC ¶ 55 (emphasis in

original).  When Gallager responded, the Estate alleges, it presented a low-ball offer that did not account for the actual out-of-pocket costs incurred by Plaintiff."  AC ¶ 55.

## B.  Procedural History

The Estate initiated this case against Gallagher by filing a complaint in the Supreme Court of New York, County of New York [ECF No. 1-2 (the "Original Complaint")].  Gallagher removed the case to this Court, invoking the Court's diversity jurisdiction [ECF No. 1].  Thereafter, in lieu of filing an answer to the Original Complaint, Gallagher filed a pre-motion letter requesting leave to file a motion to dismiss the Original Complaint for failure to state a claim [ECF No. 6].  The Estate filed a pre-motion letter in opposition to that request [ECF No. 8].  The Court granted Gallagher leave to file its contemplated motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, and, *sua sponte*, granted the Estate leave to amend its complaint before the filing of such motion to dismiss [ECF No. 10].

The Estate thereafter filed the Amended Complaint, which is its operative pleading [ECF No. 14 ("AC")].  The Amended Complaint purports to assert seven causes of action.  Specifically, it asserts claims for: (1) breach of contract, AC ¶¶ 58–63 ("Claim One"); (2) breach of the implied covenant of good faith and fair dealing, AC ¶¶ 64–68 ("Claim Two"); (3) breach of fiduciary duty, AC ¶¶ 69–72 ("Claim Three"); (4) negligence, AC ¶¶ 73–76 ("Claim Four"); (5) negligent misrepresentation, AC ¶¶ 77–81 ("Claim Five"); (6) insurance malpractice ("Claim Six"), AC ¶¶ 82–88; and (7) promissory estoppel ("Claim Seven"), AC ¶¶ 89–94.  For relief, the Estate seeks "general and/or compensatory damages" for "all injuries suffered as a result of Defendant's conduct," punitive damages, pre-judgment and post-judgment interest, and "the cost of suit incurred in this action and attorneys' fees."  AC ¶ 95.

Gallagher filed a motion to dismiss the Amended Complaint [ECF No. 15 ("Def. Mem.");

15-1 (noticing motion "pursuant to Federal Rule of Civil Procedure 12(b)(6)")].  It attached to its motion an affidavit of counsel and three exhibits [ECF Nos. 15-3 ("Thomas Aff."), 15-4, 15-5, 15-6].  Gallagher repeatedly quotes from and cites to these submissions in support of its motion to dismiss for failure to state a claim, notwithstanding that none of the defense exhibits is attached to, or mentioned in, the Amended Complaint.  *See* Def. Mem. at 4, 5, 6, 18.

Specifically, relying on its own exhibit that was neither attached to nor mentioned in the Amended Complaint, Gallagher asserts that AIG had, at least initially, refused to renew coverage for the Lipman Apartments beyond February 28, 2023.  Def. Mem. at 4 (citing Thomas Aff., Ex. A).  Gallagher further asserts, in direct contradiction to allegations in the Amended Complaint, that Gallagher does "not charge fees" to the Estate.  Def. Mem. at 4 (emphasis in original); *see id.* at 11 (asserting that "Plaintiff never paid any fees or charges to Gallagher for the insurance placement services") (emphasis in original); *but see* AC ¶ 24 (expressly alleging that the Estate paid Gallagher a service fee).  Gallagher also states in its brief that "Gallagher believed the Desk Binder was in place for the full thirty (30) days" but that AIG "took the position that the Desk Binder was only in effect from February 28, 2023 to March 10, 2023, and had to be renewed weekly thereafter, for up to thirty (30) days of total coverage."  Def. Mem. at 6.

Moreover, although Gallagher sought and received leave to file only a motion to dismiss for failure to state a claim, and noticed only a 12(b)(6) motion, Gallagher did not confine itself to arguing that the Amended Complaint fails to state a claim.  Rather, Gallagher seeks a ruling that any damages are limited to the amount that would have been recoverable if the Desk Binder had been in effect during the relevant period.  Def. Mem. at 19.  Gallagher further moves to strike several paragraphs of the Amended Complaint on that ground that "they contain information from confidential settlement discussions."  Def. Mem. at 21.

The Estate filed a memorandum of law in opposition to Gallagher's motion [ECF No. 16 ("Pl. Opp.")]. Gallagher filed a reply brief in further support of its motion [ECF No. 18 ("Reply")]. Gallagher also filed a letter requesting oral argument [ECF No. 17].

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Moreover, in this posture, a court may consider only "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Thus, a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants, or relies on factual allegations contained in legal briefs or memoranda." *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) (brackets in original) (quoting *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991).

## III.    DISCUSSION[2]

### A.  The Estate States a Claim for Negligence (Claim Four).

It is blindingly obvious that the Amended Complaint states a claim for negligence. The Amended Complaint alleges that the Estate expressly directed Gallagher to procure coverage for the Lipman Apartments for 30 days and that Gallagher failed to procure such coverage (and failed

---

[2] The parties agree that New York law governs this action. *See Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law."); *see generally* Def. Mem.; Pl. Opp.

to inform the Estate that it had failed to procure the coverage).  *See* AC ¶¶ 36, 37.  This is a textbook claim for negligence by an insurance broker.  *See American Bldg. Supply Corp. v. Petrocelli Grp., Inc.*, 19 N.Y.3d 730, 979 N.E.2d 1181 (2012) ("To set forth a case for negligence . . . against an insurance broker, a plaintiff must establish that a specific request was made to the broker for the coverage that was not provided in the policy.").

"Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002); *see Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 308, 194 N.E.3d 239, 245 (2022).  It is "settled" under New York law that an insurance broker has "a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so." *Murphy v. Kuhn*, 90 N.Y.2d 266, 270, 682 N.E.2d 972, 974 (1997); *see Voss v. Netherlands Ins. Co.*, 22 N.Y.3d 728, 734, 8 N.E.3d 823, 828 (2014) ("insurance brokers have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so") (internal quotation marks and citation omitted); *Hoffend & Sons, Inc. v. Rose & Kiernan, Inc.*, 7 N.Y.3d 152, 157, 851 N.E.2d 1149 (2006); *Cosmos, Queens Ltd. v. Matthias Saechang Im Agency*, 74 A.D.3d 682, 683, 904 N.Y.S.2d 386 (1st Dep't 2010); *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006); 2 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 18.04[a] ("It is settled law that an insurance broker has a common law duty to obtain requested coverage within a reasonable time or inform the client of the inability to do so.") (22nd ed. 2025).

The Amended Complaint alleges that, on February 24, 2023, the Estate expressly requested that Gallagher procure "coverage [of the Lipman Apartments] for 30 days," spanning the period

from February 28, 2023 until March 28, 2023.  AC ¶ 36; *see id.* ¶¶ 30–36.  In particular, the

Amended Complaint alleges that Gallagher sent the Estate an email describing the terms of the

proposed Desk Binder, including that it was "a weekly desk binder" that could "go up to 30 days."

AC ¶ 34; McDonald Email.  Gallagher instructed the Estate to "indicate [its] acceptance . . . by

return email" and to "let [Gallagher] know if extensions are needed."  AC ¶ 34; McDonald Email.

As alleged in the Amended Complaint, and stated, plain as day, in the Estate Email attached to the

Amended Complaint, the Estate responded: "This is acceptable so please proceed with extension

of coverage for 30 days."  AC ¶ 36; Estate Email.  Accordingly, the Estate adequately alleges that

Gallagher had "a common-law duty" to obtain 30 days of coverage for the Lipman Apartments, or

promptly inform the Estate that Gallagher was unable to obtain the requested 30 days of coverage.

*See Murphy* 90 N.Y.2d at 270, 682 N.E.2d at 974.

      The Amended Complaint also adequately alleges that Gallagher breached that duty.  In

particular, the Amended Complaint alleges that the Estate "never heard back from Gallagher" in

response to the Estate Email requesting coverage and "later c[a]me to learn" that Gallagher had

failed to obtain the requested coverage.  AC ¶ 37; *see id.* ¶¶ 50, 51.  Indeed, Gallagher effectively

concedes in its brief that Gallagher failed to obtain the requested 30-day extension of coverage and

failed to inform the Estate that it had no coverage.  *See* Def. Mem. at 6.

      Specifically, Gallagher asserts that "Gallagher believed the Desk Binder was in place for

the full thirty (30) days" but AIG "took the position that the Desk Binder . . . had to be renewed

weekly."  *Id.*  As an initial matter, the Court notes, this assertion is one of multiple inappropriate

attempts by Gallagher to introduce facts that are not alleged in the Amended Complaint and that

the Court may not consider on a motion to dismiss.  *See Friedl*, 210 F.3d at 83–84.  Moreover, this

assertion does nothing to absolve Gallagher, since the McDonald Email, which is attached to the

Amended Complaint, clearly states that the proposed coverage is a "weekly desk binder" and instructs the Estate to "let [Gallagher] know" if Gallagher should proceed with extensions "up to 30 days." McDonald Email; *accord* AC ¶ 34. The Estate's response, which is also attached to the Amended Complaint, clearly instructs Gallagher to proceed with extensions of the weekly desk binder "for 30 days." Estate Email; *accord* AC ¶ 36. In all events, the Amended Complaint clearly alleges that Gallagher breached its duty to procure the coverage the Estate had requested. *See Cosmos, Queens Ltd.*, 74 A.D.3d at 683.

Finally, the Amended Complaint sufficiently alleges "injury substantially caused by that breach." *Lombard*, 280 F.3d at 215; *see Ferreira*, 38 N.Y.3d at 308, 194 N.E.3d at 245. The Estate alleges that it was left without coverage, and unaware that it lacked coverage, when a fire above the Lipman Apartments caused significant damage to the Lipman Apartments. *See* AC ¶¶ 40, 41, 50, 51. As alleged in the Amended Complaint, the Estate learned from AIG that the Estate "did not have active insurance on the Lipman Apartments" because Gallagher had failed to extend the Desk Binder through the date of the fire. AC ¶ 6; *see id.* ¶ 51. The Amended Complaint alleges that, as a result, the Estate has "expend[ed] more than $800,000 of its own money" remediating damage to the Lipman Apartments. AC ¶ 56; *see id.* ¶¶ 42, 43.

The facts alleged in the Amended Complaint are more than sufficient to state a claim for negligence. Gallagher's sole argument for dismissal of this claim is the false contention that New York law requires "exceptional circumstances" to assert a claim for simple negligence against an insurance broker. Def. Mem. at 3; *see id.* at 14–15. There is no support for that argument. As explained above, "settled" New York law holds that an insurance broker can be held liable in negligence for failing to procure requested coverage. *Murphy*, 90 N.Y.2d at 270, 682 N.E.2d at 974. Accordingly, Gallagher's motion to dismiss is denied with respect to the Estate's well pled

claim for negligence.

**B.  The Estate States a Claim for Breach of Contract (Claim One).**

The Amended Complaint also states a claim for breach of contract.  Under New York law, a plaintiff can bring "a case for negligence *or breach of contract* against an insurance broker" for failure to procure requested coverage. *American Bldg. Supply Corp.*, 19 N.Y.3d at 730, 979 N.E.2d at 1181 (emphasis added); *see* 2 Ostrager & Newman, *Handbook on Insurance Coverage Disputes* § 18.04[a][3].  To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004); *see 34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287 (2022).

It is hornbook law that an agreement may be expressed "in words either oral or written, or may be inferred wholly or partly from conduct." *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93, 721 N.E.2d 966, 969 (1999) (quoting Restatement (Second) of Contracts § 4 (1981)).  Irrespective of whether an alleged contract is express or implied, the "plaintiff does not need to attach a copy of the alleged contract to his complaint or quote directly from the contract alleged to have been breached." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011); *see First Class Concrete Corp. v. Rosenblum*, 167 A.D.3d 989, 990, 91 N.Y.S.3d 441, 443 (2nd Dep't 2018). Rather, the plaintiff must allege "the essential terms" of the alleged agreement in "nonconclusory language." *Fink*, 810 F. Supp. 2d at 644; *see Sirohi v. Trustees of Columbia University*, 162 F.3d 1148 (2d Cir. 1998); *Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 80 A.D.3d 453, 454, 915 N.Y.S.2d 239, 241 (1st Dep't 2011).

Gallagher seeks dismissal of the Estate's claim for breach of contract on the ground that

the Estate fails to allege the existence of a contract. *See* Def. Mem. at 10–12. However, the Amended Complaint adequately alleges the essential terms of an agreement between the parties. The Amended Complaint alleges that a "professional services agreement . . . formed at the start of [the] relationship" between Ira Lipman and Gallagher and "renewed with every successive invoice sent by Gallagher and paid by the Estate." AC ¶ 23. The Amended Complaint alleges that the essential terms of the contract were that, "once Plaintiff indicated to Gallagher what insurance needs it had, Gallagher would act on Plaintiff's behalf as an insurance broker, assess [Plaintiff's] needs for insurance (including through direct instructions from Plaintiff), work diligently to acquire the necessary and appropriate insurance coverage . . . , and earn a professional services fee (a broker's fee) for its work." AC ¶ 23.

Gallagher contends that such allegations are insufficient. Specifically, Gallagher contends that the contract claim should be dismissed because the Estate "failed to attach a copy of the alleged 'agreement'" or "set forth the explicit terms" of the contract. Def. Mem. at 10. Gallagher further wails that "Plaintiff fails to direct Gallagher or the Court to an actual contract that was allegedly breached." Def. Mem. at 10 (emphasis in original).

However, the Estate was not required to attach a contract to its pleading or recite alleged contract language. *See Fink*, 810 F. Supp. 2d at 644; *First Class Concrete Corp.*, 167 A.D.3d at 990, 91 N.Y.S.3d at 443; *Pitcock*, 80 A.D.3d at 454, 915 N.Y.S.2d at 241. Indeed, Gallagher either intentionally ignores or is oblivious to the basic contracts precept that the Estate may allege an agreement implied in fact from the "conduct" of the parties. *Maas*, 94 N.Y.2d at 93, 721 N.E.2d at 969. Citing an inapposite case, in which the plaintiff had offered only conclusory allegations of "an oral or implied arrangement" with its insurance broker ignores that, here, the Estate adequately alleged the essential terms of its alleged agreement with Gallagher, including specific conduct by

the parties in connection with the coverage of the Lipman Apartments over the course of multiple years and payment by the Estate of invoices from Gallagher that allegedly included a fee for professional services. *Martin Assocs., Inc. v. Illinois Nat'l Ins. Co.*, 188 A.D.3d 572, 134 N.Y.S.3d 349 (2020); *see* Def. Mem. at 10–11; AC ¶¶ 23, 24, 26, 27.

Specifically, as alleged in the Amended Complaint, "Plaintiff began seeking Gallagher's help in acquiring and maintaining appropriate insurance coverage" for the Lipman Apartments "starting around 2016." AC ¶ 26. The Amended Complaint alleges that, "[f]rom that point forward, Gallagher worked on Plaintiff's behalf to maintain" continuous insurance coverage for the Lipman Apartments. AC ¶ 26. Gallagher's services allegedly included "the provision of advice and guidance" about how best to protect the Lipman family's interests "with the available/possible insurance policies." AC ¶ 22. The Amended Complaint alleges that maintaining continuous coverage for the Lipman Apartments was the shared "goal" of the parties. AC ¶ 26. To that end, the Amend Complaint alleges, every year from 2018 through 2022, "Gallagher extended coverage of the Lipman Apartments on behalf of the Estate" for one year and "sent the Estate four invoices" over the course of that year, which the Estate, in turn, "paid in full." AC ¶ 27. Furthermore, the Amended Complaint alleges, the Estate's "invoice payment[s] cover[ed] both the price of the desired insurance and Gallagher's professional services/broker fee." AC ¶ 24.

Based on these allegations, the Amended Complaint adequately alleges the essential terms of an agreement between the Estate and Gallagher, which "may be inferred wholly or partly from conduct," to maintain continuous coverage for the Lipman Apartments in exchange for fees. *Maas*, 94 N.Y.2d at 93, 721 N.E.2d at 969. Gallagher argues that "<u>Plaintiff never paid any fees or charges to Gallagher for the insurance placement services</u>." Def. Mem. at 11 (emphasis in original). Of course, consideration is an element of an enforceable agreement. *Kolchins v. Evolution Markets,*

*Inc.*, 128 A.D.3d 47, 59, 8 N.Y.S.3d 1, 9 (1st Dep't 2015), *aff'd*, 31 N.Y.3d 100, 96 N.E.3d 784 (2018).  However, Gallagher's argument that it never received fees from the Estate, which directly contradicts allegations in the Amended Complaint, is entirely inappropriate on a motion to dismiss. *See Friedl*, 210 F.3d at 83–84.

To be sure, in describing the Desk Binder that Gallagher allegedly failed to procure for the requested period, the McDonald Email (which is attached to the Amended Complaint and therefore properly before the Court) states: "There is no charge for *this* binder.  McDonald Email (emphasis added).  The McDonald Email, however, does not contradict the allegations in the Amended Complaint that the Estate "[t]ypically" paid invoices that included payments of a service fee to Gallagher.  AC ¶ 24.  Furthermore, it is long settled that, in the context of some service agreements, "[c]onsideration was not lacking" merely because the defendant "promise[d]" to perform a service "without charge."  *Walton Water Co. v. Vill. of Walton*, 238 N.Y. 46, 46, 143 N.E. 786 (1924).  Indeed, Gallagher maintains that, as a rule "[i]nsurance brokers, including Gallagher, do <u>not</u> charge fees to the consumers, i.e. policyholders," such as the Estate, and are "paid a commission by the insurance carrier" only.  Def. Mem. at 4 (emphasis in original).  Accepting Gallagher's logic that, in such a circumstance, the insurance broker receives no consideration for its services to a policyholder, a policyholder could *never* maintain a breach of contract action against an insurance broker.  That is not the law in New York.  *See American Bldg. Supply Corp.*, 19 N.Y.3d at 730, 979 N.E.2d at 1181 (a plaintiff can bring "a case for . . . breach of contract against an insurance broker" for failure to procure requested coverage).

Gallagher is free to argue at later stages of this case that there was no meeting of the minds as to any agreement to maintain continuous coverage for the Lipman Apartments in exchange for service fees paid by the Estate.  *Kolchins*, 128 A.D.3d at 59, 8 N.Y.S.3d at 9.  At this stage, however,

the Estate has offered sufficient facts to plausibly allege the existence of an agreement. *See Iqbal*, 556 U.S. at 678; *Maas*, 94 N.Y.2d at 93, 721 N.E.2d at 969. The Amended Complaint also alleges that the Estate performed by paying every invoice it received, that Gallagher breached by failing to maintain coverage for the Lipman Apartments, and the Estate was damaged when it had to bear the costs of remediation alone. *See* AC ¶¶ 27, 40, 41, 50, 51. As such, the Estate states a claim for breach of contract under New York law. *See Eternity Global Master Fund Ltd.*, 375 F.3d at 177; *34-06 73, LLC*, 39 N.Y.3d at 52, 198 N.E.3d at 1287.

### C. The Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Must Be Dismissed as Duplicative (Claim Two).

The Amended Complaint asserts a claim for breach of the implied covenant of good faith and fair dealing "[i]n the alternative to [its] breach of contract claim." AC ¶ 66. Gallagher argues that the implied covenant claim must be dismissed as duplicative of the Estate's breach of contract claim. *See* Def. Mem. at 12–14. Gallagher is correct.

"[T]here exists under New York law an implied covenant of good faith and fair dealing, pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990); *see Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 639 N.Y.S.2d 977, 663 N.E.2d 289, 291 (1995). As the Second Circuit has explained, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *see Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). "In other words, 'such a claim may be brought, if at all, only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain.'" *JPMorgan*

*Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 321222, at *4 (S.D.N.Y. Feb. 9, 2009) (quoting *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 175, 180–81 (S.D.N.Y. 2007)); *see AEA Middle Mkt. Debt Funding LLC v. Marblegate Asset Mgmt., LLC*, 214 A.D.3d 111, 133, 185 N.Y.S.3d 73, 90 (1st Dep't 2023).

The Estate does not contend that its claim for breach of the implied covenant is based upon different facts from its breach of contract claim. Rather, the Estate argues that "courts in this circuit" have concluded that "while a plaintiff cannot ultimately recover on both a breach of contract and breach of implied covenant claim, it may litigate both claims through discovery when the claims are pled in the alternative. Pl. Opp. at 9 (citing *Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004) and *Fantozzi v. Axsys Techs., Inc.*, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008)).

The Court respectfully disagrees with the two district court decisions cited by the Estate, which are contrary to binding authority and are outliers in this Circuit. Those decisions observe, correctly, that, under the Federal Rules of Civil Procedure, a party may plead in the alternative. *See Xpedior Creditor Tr.*, 341 F. Supp. 2d at 272; *Fantozzi*, 2008 WL 4866054, at *7; Fed. R. Civ. P. 8(d). The court in *Fantozzi* further observed, correctly, that, under New York law, a party may assert both contract and quasi-contract claims if the parties dispute the existence of the alleged contract. *Fantozzi*, 2008 WL 4866054, at *7 (citing *Randall v. Guido*, 238 A.D.2d 164, 164, 655 N.Y.S.2d 527, 528 (1997)).

New York courts, however, have clearly and repeatedly held that a claim for breach of the implied covenant of good faith and fair dealing "must be dismissed" on a motion to dismiss where, as here, it is duplicative of a breach of contract claim because both claims are based on the same facts and seek the same damages. *Mill Fin., LLC v. Gillett*, 122 A.D.3d 98, 104, 992 N.Y.S.2d 20,

25 (1st Dep't 2014); *see AEA Middle Mkt. Debt Funding LLC*, 214 A.D.3d at 133, 185 N.Y.S.3d

at 90; *Jacobs Priv. Equity, LLC v. 450 Park LLC*, 22 A.D.3d 347, 347, 803 N.Y.S.2d 14, 15 (2005).

In light of this authority and the Second Circuit precedents cited above, the great run of decisions

in this District (including a later decision by the judge who authored *Xpedior Creditor*) dismiss

duplicative implied covenant claims at the pleading stage.  *See, e.g.*, *Boart Longyear Ltd. v. All.

Indus., Inc.*, 869 F. Supp. 2d 407, 416 (S.D.N.Y. 2012); *Blessing v. Sirius XM Radio Inc.*, 756 F.

Supp. 2d 445, 460 (S.D.N.Y. 2010); *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 244 (S.D.N.Y.

1997); *JPMorgan Chase Bank, N.A.*, 2009 WL 321222, at *5.

Furthermore, it is a mistake to "analogiz[e] implied covenant claims to quasi-contractual

claims" to rationalize allowing such a duplicative implied covenant claim to proceed where the

existence of the contract is in dispute.  *Ret. Bd. of Policemen's Annuity & Ben. Fund of City of

Chicago v. Bank of New York Mellon*, 2014 WL 3858469, at *4 (S.D.N.Y. July 30, 2014).  "Under

New York law, plaintiffs may assert quasi-contract claims in the alternative to breach of contract

claims where the existence, scope, or meaning of the contract is in dispute because the two claims

represent mutually exclusive remedies."  *Id.* (citing *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d

253, 263 (2d Cir. 1999)).  "But an implied covenant does not offer an alternate remedy to a contract

claim; it is embedded in every contract."  *Id.*

Accordingly, since the Estate concedes that its claim for breach of the implied covenant of

good faith and fair dealing is based on the same facts and seeks the same remedy as its contract

claim, *see* Pl. Opp. at 9, the implied covenant claim "must be dismissed."  *Mill Fin., LLC*, 122

A.D.3d at 104, 992 N.Y.S.2d at 25.

**D.  The Estate States a Claim for Promissory Estoppel (Claim Seven)**

Unlike the implied covenant of good faith and fair dealing, promissory estoppel is "a form of quasi-contract." *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 342 (S.D.N.Y. 2023).  It is a "narrow doctrine" that, among other circumstances, "applies where there is no written contract." *Id.*; *accord Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 360–61 (S.D.N.Y. 2017).  The Estate may plead this quasi-contract claim, in the alternative to its contract claim, since there is a dispute about the existence of the contract Gallagher allegedly breached.  *See Randall v*, 238 A.D.2d at 164, 655 N.Y.S.2d at 528; *see also* Fed. R. Civ. P. 8(d).

"The elements of a claim for promissory estoppel are: (1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance." *MatlinPatterson ATA Holdings LLC v. Federal Express Corp.*, 87 A.D.3d 836, 841–42, 929 N.Y.S.2d 571 (1st Dep't 2011); *see Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*, 804 F.2d 787, 793 (2d Cir. 1986).  Gallagher argues that the Amended Complaint fails to allege a clear and unambiguous promise by Gallagher.  Def. Mem. at 18.  The Court disagrees. The Amended Complaint alleges that Gallagher clearly and unambiguously promised that it could procure "up to 30 days" of coverage if the Estate simply "indicate[d] [its] acceptance" and "let [Gallagher] know [that] extensions [were] needed." AC ¶ 34. McDonald Email.  At minimum, the statements in the McDonald Email "create a factual question" as to whether Gallagher made a clear and unambiguous promise to procure coverage such that the claim may proceed to discovery. *Esquire Radio & Elecs., Inc.*, 804 F.2d at 793 (quoting *Dominguez v. Manhattan and Bronx Surface Transit Operating Authority*, 46 N.Y.2d 528, 532, 388 N.E.2d 1221, 1223, 415 N.Y.S.2d 634, 636

(1979); *see Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 534 (S.D.N.Y. 2007).

The Amended Complaint further alleges that the Estate reasonably relied on Gallagher's alleged promise to procure coverage and was injured by that reliance. Specifically, the Amended Complaint alleges that the Estate indicated its acceptance of the Desk Binder and directed Gallagher to "proceed with extension of coverage for 30 days." AC ¶ 36. In particular, as alleged in the Amended Complaint, Gallagher had instructed the Estate to "indicate [its] acceptance . . . by return email," and the Estate did so, by "respond[ing] to Ms. McDonald's email" the same day. AC ¶¶ 34, 36. The Amended Complaint further alleges that, when the Estate did not receive any further correspondence from Gallagher on the matter, the Estate "assumed—reasonably—that the extension had been taken care of by the insurance broker whose professional services Plaintiff had used and trusted for years." AC ¶ 37. As such, the Amended Complaint alleges, the Estate lacked coverage (and was unaware that it lacked coverage) when the Lipman Apartments were damaged, and the Estate has borne significant costs. *See* AC ¶¶ 41, 42, 50, 51. Accordingly, drawing all inferences in its favor, the Estate states a facially plausible claim for relief under the doctrine of promissory estoppel. *See Iqbal*, 556 U.S. at 678; *Faber*, 648 F.3d at 104.

**E.  The Estate Plausibly Alleges a Fiduciary Relationship with Gallagher (Claim Three).**

The Amended Complaint asserts a claim for breach of fiduciary duty. AC ¶¶ 70–72. In seeking dismissal of this claim, Gallagher argues that the parties had a "typical consumer-insurance broker relationship," rather than a fiduciary relationship. Def. Mem. at 3. However, accepting the Estate's factual allegations as true and drawing all reasonable inferences in its favor, as the Court must, the Court concludes that the Amended Complaint alleges a "special relationship" between the parties, imposing a special duty on Gallagher. *Voss*, 985 N.Y.S.2d at 452–453, 8 N.E.3d at 828;

*see* 2 Ostrager & Newman, *Handbook on Insurance Coverage Disputes* § 18.04[a][2].

To state a claim for breach of fiduciary duty, a plaintiff must allege: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011); *see Burry v. Madison Park Owner LLC*, 84 A.D.3d 699, 699, 924 N.Y.S.2d 77, 78 (1st Dep't 2011). Pertinent here, "absent a special relationship, a claim for breach of fiduciary duty does not lie." *Bruckmann, Rosser, Sherrill & Co., L.P. v. Marsh USA, Inc.*, 65 A.D.3d 865, 867, 885 N.Y.S.2d 276, 278 (1st Dep't 2009). Ordinarily, "a broker is not in a special relationship with an insured." *GlobalNet Financial.Com, Inc.*, 449 F.3d at 383; *see Murphy*, 90 N.Y.2d at 269–270. However, the New York Court of Appeals has "identified three exceptional situations that may give rise to a special relationship, thereby creating an additional duty" on the part of the broker. *Voss*, 22 N.Y.3d at 735, 985 N.Y.S.2d at 453, 8 N.E.3d at 828. Those exceptional situations are:

> (1) the agent receives compensation for consultation apart from payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on.

*Id.* (quoting *Murphy*, 90 N.Y.2d at 272, and applying the precedent to "special relationships in the insurance brokerage context").

The Amended Complaint clearly alleges that the first exceptional situation existed here. It alleges that the Estate paid Gallagher "a professional services fee (a broker's fees) for its work." AC ¶ 24. As explained above, Gallagher asserts that the Estate never paid Gallagher such a fee. Def. Mem. at 11. The Court, however, must accept the Estate's factual allegations as true at this stage. *See Iqbal*, 556 U.S. at 678; *Faber*, 648 F.3d at 104.

Moreover, drawing all reasonable inferences in the Estate's favor, the Amended Complaint

alleges that the second exceptional situation existed (*i.e.*, that there was an "interaction regarding a question of coverage" in which the Estate relied on Gallagher's "expertise"). *See Faber*, 648 F.3d at 104; *Voss*, 985 N.Y.S.2d at 453, 8 N.E.3d at 828. The Amended Complaint specifically alleges that, with respect to the Lipman Apartments, when the Estate "realized that it needed to seek interim coverage," it was Gallagher that "suggested" seeking a 30-day extension from AIG. AC ¶¶ 31, 32. The Amended Complaint further alleges that the Estate "relied entirely" on Gallagher to work out the terms of the Desk Binder with AIG. AC ¶ 32. Furthermore, as alleged in the Amended Complaint and reflected in the email correspondence attached to the Amended Complaint, Gallagher informed the Estate of the terms of the Desk Binder, and the Estate indicated its acceptance almost immediately and in the manner Gallagher had directed. *See* AC ¶¶ 33–36; McDonald Email; Estate Email. Taking these allegations together and drawing all reasonable inferences in favor of the Estate, it plausibly alleges that it relied on Gallagher's expertise during the parties' interactions about obtaining interim coverage for the Lipman Apartments. *See Faber*, 648 F.3d at 104; *Voss*, 985 N.Y.S.2d at 453, 8 N.E.3d at 828.

Similarly, with respect to the third exceptional situation, the Amended Complaint alleges a "course of dealing over an extended period" that would have put Gallagher "on notice" of the Estate's special reliance. *Voss*, 985 N.Y.S.2d at 453, 8 N.E.3d at 828. The Amended Complaint alleges that, over the course of the parties' relationship, "Gallagher's services" have "included not just rote execution of a request for a specific policy, but also the provision of advice and guidance" for "sometimes novel" insurance needs. AC ¶ 22. In particular, the Amended Complaint alleges, "Plaintiff has sought out" and "relied" on Gallagher's expertise in connection with "tens of millions of dollars in homeowners' liability coverage for millions of dollars in high-end real estate in New York," a "rare art collection," and various business needs. AC ¶¶ 21, 25. The Amended

Complaint thus offers sufficient facts from which the Court reasonably can infer that the parties had a special relationship.

Gallagher's sole argument for dismissal of the fiduciary duty claim is that the parties had a "typical consumer-insurance broker relationship," rather than a special relationship.  Def. Mem. at 3; *see id.* at 15.  Gallagher does not challenge the sufficiency of the Estate's allegations of breach and damages in connection with its fiduciary duty claim.  Accordingly, because the Amended Complaint plausibly alleges a special relationship, the Court rejects Gallagher's request to dismiss at the pleading stage the claim for breach of fiduciary duty.

### F.  The Claim for Negligent Misrepresentation Likewise Survives (Claim Five).

To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000); *see J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148, 863 N.E.2d 585, 587 (2007).  Here, Gallagher seeks to dismiss the claim for negligent misrepresentation solely on the ground that Gallagher did not owe the Estate a duty as a result of a special relationship.  *See* Def. Mem. at 3, 14–16.  Gallagher does not challenge the sufficiency of the Amended Complaint with respect to any other element of the negligent misrepresentation claim.  However, as explained above, the Amended Complaint plausibly alleges a special relationship based on the exceptional situations identified by the New York Court of Appeals.  *See Voss*, 985 N.Y.S.2d at 453, 8 N.E.3d at 828; *supra* § III.E.  While there may be other arguments for dismissing this claim, Gallagher

has forfeited such arguments by failing to raise them in its opening brief.  *See JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.,* 412 F.3d 418, 428 (2d Cir. 2005); *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018).  As such, the claim survives for the reasons set forth above.

## G.  The Claim for Insurance Malpractice Is Dismissed (Claim Six).

The Amended Complaint purports to assert a claim for insurance malpractice.  AC ¶¶ 83– 88.  However, New York courts have held that "claims against [insurance brokers and agents] do not sound in professional malpractice."  *Busker on The Roof P'ship Co. v. Warrington*, 283 A.D.2d 376, 725 N.Y.S.2d 45 (1st Dep't 2001); *see Chase Sci. Rsch., Inc. v. NIA Grp., Inc.*, 96 N.Y.2d 20, 30, 749 N.E.2d 161 (2001); *Santiago v. 1370 Broadway Assocs*., L.P., 264 A.D.2d 624, 625, 695 N.Y.S.2d 326 (1st Dep't 1999), *aff'd as modified*, 96 N.Y.2d 765, 749 N.E.2d 168 (2001) ("An insurance broker is not capable of committing 'professional malpractice.'").  In any event, the Estate concedes that any such claim would be wholly duplicative of its negligence claim.  *See* Pl. Opp. at 12.  Accordingly, the claim for insurance malpractice is dismissed.

## H.  Gallagher's Damages Arguments Are Premature.

Although Gallagher requested and received leave to file only a motion to dismiss for failure to state a claim, in its brief, Gallagher also requests rulings limiting the damages the Estate may seek.  *See* Def. Mem. at 19–21.  However, "[t]he Court's task on a motion to dismiss is to 'consider the factual allegations in [a] complaint to determine if they plausibly suggest an entitlement to relief,' . . . and not to determine the appropriate remedy."  *RJ Cap., S.A. v. Lexington Cap. Funding III, Ltd.*, 2011 WL 3251554, at \*16 (S.D.N.Y. July 28, 2011) (quoting *Iqbal*, 556 U.S. at 681); *accord JM Holdings 1 LLC v. Quarters Holding GmbH*, 2021 WL 860516, at \*5 (S.D.N.Y. Mar. 8, 2021).  Thus, "it is premature at the motion to dismiss stage to determine what form of damages

may be appropriate." *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 2017 WL 4535933, at *5 (E.D.N.Y. Oct. 7, 2017); *accord FCOF UB Securities LLC v. Mor Equity, Inc.*, 663 F. Supp. 2d 224, 231 n.2 (S.D.N.Y. 2009).

**I.  Gallagher's Unauthorized Motion To Strike Is Denied.**

Finally, Gallagher argues that several paragraphs of the Amended Complaint "must be stricken because they contain information from confidential settlement discussions protected under Fed. R. Evid. 408." Def. Mem. at 21.  In the relevant paragraphs, the Estate alleges that it has "sent a multitude of communications to Gallagher attempting to resolve this matter." AC ¶ 52. The Estate proceeds to allege that "Gallagher has acknowledged responsibility" yet it has "slow-walked" negotiations, "shunted Plaintiff from one team of lawyers to the next," and made "a low-ball offer." AC ¶¶ 52–55.

The same allegations appeared in the Original Complaint [ECF No. 1-2].  Yet Gallagher neither requested nor received leave to file a motion to strike, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  Rather, Gallagher requested and received leave to file only a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) [ECF Nos. 6, 10].  Moreover, when it filed the pending motion, Gallagher noticed only a Rule 12(b)(6) motion [ECF No. 15-1].  The Court therefore denies Gallagher's unauthorized Rule 12(f) motion to strike allegations from the Amended Complaint as procedurally improper.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, the motion to dismiss [ECF No. 15] is DENIED in part and GRANTED in part.  Specifically, the motion to dismiss is denied as to the Estate's claims for breach of contract (Claim One), breach of fiduciary duty (Claim Three), negligence (Claim Four), negligent misrepresentation (Claim Five), and promissory estoppel (Claim Seven).  The motion is

granted as to the claims for breach of the implied covenant of good faith and fair dealing (Claim Two) and Insurance Malpractice (Claim Six).  The motion to strike is DENIED.  The request by Gallagher for oral argument on the motion [ECF No. 17] is also DENIED.

The Clerk of Court respectfully is requested to terminate the motion at docket entries 15 and 17.

**SO ORDERED.**

**Date:  September 25, 2025**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**